IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| FRACTUS, S.A.,<br><br>    Plaintiff,<br><br>v. | |
| AT&T MOBILITY LLC,<br><br>    Defendant,<br><br>and<br><br>COMMSCOPE TECHNOLOGIES LLC and CELLMAX TECHNOLOGIES AB,<br><br>    Intervenor-Defendants. | Case No. 2:18-cv-00135-JRG<br>LEAD CASE |
| SPRINT COMMUNICATIONS COMPANY, L.P., ET AL.,<br><br>    Defendants,<br><br>and<br><br>COMMSCOPE TECHNOLOGIES LLC and CELLMAX TECHNOLOGIES AB,<br><br>    Intervenor-Defendants. | Case No. 2:18-cv-00136-JRG |
| T-MOBILE US, INC., ET AL.,<br><br>    Defendants,<br><br>and<br><br>COMMSCOPE TECHNOLOGIES LLC and CELLMAX TECHNOLOGIES AB,<br><br>    Intervenor-Defendants. | Case No. 2:18-cv-00137-JRG |
| CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS,<br><br>    Defendant,<br><br>and | Case No. 2:18-cv-00138-JRG |

| |
|---|
| COMMSCOPE TECHNOLOGIES LLC, |
| Intervenor-Defendant. |

## ORDER FOCUSING PATENT CLAIMS AND PRIOR ART TO REDUCE COSTS

The Court ORDERS as follows:

1. This order supplements all other discovery rules and orders. It streamlines the issues in this case to promote a "just, speedy, and inexpensive determination" of this action, as required by Federal Rule of Civil Procedure 1.

### *Phased Limits on Asserted Claims and Prior Art References*

2. By the date set for the opening claim construction brief pursuant to P.R. 4-5(a), Plaintiff Fractus, S.A. ("Fractus") shall serve a Preliminary Election of Asserted Claims, which shall assert, from among those claims previously identified by Fractus pursuant to P.R. 3-1(a), no more than ten claims from each patent and not more than a total of 32 claims across the related cases. Not later than 14 days after the deadline for service of the Preliminary Election of Asserted Claims, Defendants[1] shall serve a Preliminary Election of Asserted Prior Art, which shall assert no more than **[Fractus's proposal:** 12**][Defendants' proposal**: 24**]** prior art references against each patent and not more than a total of **[Fractus's proposal:** 40 references**][Defendants' proposal**: 40 references against each patent family**]**.[2,3]

---

[1] For purposes of this Order, AT&T Mobility LLC is a single Related Defendant Group; Sprint Communications Company, L.P., Sprint Spectrum, L.P., Sprint Solutions, Inc., and Nextel Operations, Inc. are a single Related Defendant Group; T-Mobile US, Inc. and T-Mobile USA, Inc. are a single Related Defendant Group; Cellco Partnership d/b/a/ Verizon Wireless is a single Related Defendant Group; CommScope Technologies LLC is a single Related Defendant Group; and CellMax Technologies AB is a single Related Defendant Group. "Defendants" refers to all Related Defendant Groups collectively.

[2] For purposes of this Order, a prior art instrumentality (such as a device or process) and associated references that describe that instrumentality shall count as one reference, as shall the closely related work of a single prior artist.

[3] For purposes of this Order, the asserted patent families are defined as: (1) the "IMBA Asserted Patents" (U.S. Patent Nos. 6,937,191; 7,250,918; 7,557,768; 7,932,870; 8,228,256; 8,896,493; and 9,905,940), and (2) the "STBA Asserted Patents" (U.S. Patent Nos. 8,497,814; 8,754,824; and 9,450,305).

3. No later than 28 days before the deadline for service of expert reports by the party (or parties) with the burden of proof on an issue, Fractus shall serve a Final Election of Asserted Claims, which shall **[Fractus's proposal:** identify**][Defendants' proposal**: identify for each Related Defendant Group**]** no more than five asserted claims per patent from among the previously identified claims in the Preliminary Election of Asserted Claims, and no more than a total of 16 claims.  For purposes of this Final Election of Asserted Claims, Fractus will identify the same set of claims across these related cases for any particular accused antenna product and its insubstantial variants. By the date set for the service of expert reports by the party (or parties) with the burden of proof on an issue, **[Fractus's proposal:** Defendants**][Defendants' proposal**: each Related Defendant Group**]** shall serve a Final Election of Asserted Prior Art, which shall identify no more than **[Fractus's proposal:** six**][Defendants' proposal**: ten**]** asserted prior art references per patent from among the prior art references previously identified in the Preliminary Election of Asserted Prior Art for that particular patent and no more than a total of **[Fractus's proposal:** 20 references**][Defendants' proposal**: 20 references against each patent family**]**.  For purposes of this Final Election of Asserted Prior Art, each obviousness combination counts as a separate prior art reference. **[Fractus's proposal:** For purposes of this Final Election of Asserted Prior Art, if Fractus asserts a claim against one or more defendant group that is not asserted against all defendant groups, the defendant group(s) against whom the claim is asserted may elect one additional prior art reference for that patent.**]**

4. Should Fractus decide to assert infringement of only one patent, all per-patent limits in this Order are increased by 50%, rounding up.

*Modification of this Order*

5. Subject to Court approval, the parties may modify this Order by agreement, but should endeavor to limit the asserted claims and prior art references to the greatest extent

possible. Absent agreement, post-entry motions to modify this Order's numerical limits on asserted claims and prior art references must demonstrate good cause warranting the modification. Motions to modify other portions of this Order are committed to the sound discretion of the Court.[4]

**Fractus's Statement Regarding Disputed Provisions:**

Fractus's proposal conforms with this Court's model order significantly narrowing the issues in the case. Specifically, Fractus's proposed order limits the initial election of claims to 10 claims per patent, and 32 claims across the related cases, and limits the final election of claims to 5 claims per patent, and 16 claims overall. To the extent it deviates from the model order, the proposed changes are in Defendants' favor, for example, by requiring Fractus to narrow its claims earlier than contemplated in this court's model order.

Fractus has asserted two patent families claiming their inventions of multiband antenna arrays used in cellular communications. The two families entail related concepts. The carrier defendants share common suppliers and often use the same or very similar accused antennas. The accused products largely fall into a few categories of antennas with similar physical characteristics, and for antennas within each category Fractus's infringement contentions are largely identical. Fractus has agreed to Defendants' proposal that it be required to assert the same claims against the same antennas.

Fractus anticipates that the set of claims it elects will be the same or nearly the same for all of the defendants. But as a further accommodation, and to address Defendants' concern that the same claims may not be asserted against all defendants, Fractus has proposed providing them with a proportional increase in prior art. For each claim asserted against one defendant

---

[4] This Order contemplates that the parties and the Court may further narrow the issues during pretrial proceedings in order to present a manageable case at trial.

but not others, Fractus proposes allowing that defendant to elect an additional prior art reference.

By contrast, Defendants' proposal requires Fractus to adhere to the model order's limits while vastly expanding the number of prior art references they are allowed to maintain. Defendants propose that they be allowed to assert 24 references per patent and 80 references for the two families in the first round, and for the final election, that *each* of the six defendant groups be allowed 10 prior art references per patent and 40 references for the two families. Should each defendant group elect prior art references not chosen by the other defendant groups, this would result in up to 60 references per patent and up to 240 references total for the two families. Defendants assert that the one-sided deviation is warranted in part by the fact that Fractus *currently* asserts a larger number of claims. But, consistent with the practices of this Court, this proposed order sets a date by which Fractus will be required to narrow its claims. Once Fractus does so, Defendants will face at most 32 claims, at which time maintaining up to 240 prior art references will be unjustified.

Though the circumstances here do not warrant a deviation from the model order, Fractus has proposed an order that provides additional latitude to Defendants without any corresponding expansion of limits applicable to Fractus. It respectfully requests the Court adopt its proposal.

**Defendants' Statement Regarding Disputed Provisions:**

Defendants respectfully submit that there are several circumstances in these four related cases that make it important and appropriate to impose modestly higher prior art limits than what can be found in the Model Order, as Defendants have proposed herein. These circumstances include the following:

- In these cases, Fractus asserts ten patents across two separate patent families. While both patent families relate generally to antenna technology, Fractus's own Complaint

alleges that the two patent families cover different inventions, meaning that they are directed to different subject matter.  (*See* Dkt. No. 100 (First Am. Compl.) ¶¶ 22-23 (describing each patent family as allegedly covering its own "innovation" or "invention").)  Fractus also asserts that the two patent families have different priority dates.  For each of these reasons, the composition of asserted prior art (in terms of both subject matter and timing) will necessarily differ as between the two patent families.  This alone necessitates separate prior art limits directed to each patent family.

- There are six different Defendant Groups (including Defendant-Intervenors) – including the four carriers that Fractus chose to accuse – across these cases.  Fractus has indicated that it intends to accuse a different set of products against each Defendant Group – which is not surprising, given that each of the manufacturer Defendant-Intervenors makes its own antenna models and each carrier Defendant uses a unique combination of antenna manufacturers and models.[5]  Thus, the issues and accused products will be different in each case.  For example, Fractus asserts the '824 patent and claims 1-3, 6-8, and 11-12 of the '305 patent against some Defendant Groups, but not against other Defendant Groups.  Further, three weeks ago, Fractus indicated that it plans to seek leave to change the set of asserted claims against each Defendant Group, add even more products and new antenna suppliers to the case, as well as attempt to pursue previously undisclosed infringement theories, but so far has provided very limited information to Defendants about these changes.  Each Defendant Group needs the ability to select and develop prior art appropriate for its respective case.  (Despite announcing its intentions three weeks ago, Fractus has yet to provide any clarity on its new proposed contentions or a date certain by which it will seek leave to make any

---

[5] Despite Fractus's assertion, the carrier Defendants (T-Mobile, Sprint, Verizon, AT&T) have many antenna suppliers not in common.  For example, CellMax, a manufacturer that has intervened in these cases, does not sell products to all carrier Defendants, as it has not sought to intervene in the case brought against carrier Defendant Verizon.

amendments.)  Further, each Defendant Group has retained its own counsel.  As such, each Defendant Group "should be afforded additional flexibility to ensure [it] is able to move forward with its desired references."  *Freeny v. Apple Inc.*, Defs.' Resp. in Opp. to Pls.' Mot. to Adopt Model Order, No. 2:13-cv-00361, Dkt. No. 75, at 3 (E.D. Tex. Mar. 20, 2014); *see also Freeny v. Apple Inc.*, Order, No. 2:13-cv-00361, Dkt. No. 79 (E.D. Tex. Apr. 2, 2014) (granting increased prior art limits).  Because different Defendant Groups may need to rely upon different prior art, Defendants propose that the Final Election of Asserted Prior Art be on a per-Defendant Group basis.  (Out of fairness and reciprocity, Defendants also proposed that Fractus's Final Election of Asserted Claims be allowed to identify a different set of claims against each Defendant Group.)  Moreover, in the interest of narrowing the case even further, Defendants' proposal would sacrifice these rights and impose a shared prior art limit in the Preliminary Election of Asserted Prior Art.  As these four cases have been consolidated only for pre-trial purposes, the Defendant Groups seek the flexibility to assert their own prior art references at trial.  *See* 35 U.S.C. § 299(a).

- In its operative infringement contentions, Fractus asserts 161 claims in each of these cases, a large number for this stage of litigation.  Defendants asked Fractus to reduce the number of asserted claims by this point in the case to minimize the burdens in the claim construction process, but Fractus refused to do so.  As such, Defendants do not yet know which set of claims Fractus will end up selecting when it eventually does narrow the case. Further, the 161 asserted claims – which include a diverse collection of dependent claims – encompass a wide range of subject matter, and there are even differences in claimed subject matter from patent to patent within each patent family.  As a result, depending in part on which claims Fractus chooses to assert, the diversity of subject matter that will potentially be at issue at trial will demand a greater number of prior art references than what might be found in a more typical case.  Given Defendants' uncertainty as to which of the 161 claims will be

asserted, Defendants seek prior art limits that would be reasonable under any potential combination of asserted claims.  This circumstance also necessitates higher limits on prior art than what the Model Order provides, both on a per-patent and on an overall basis.

The Model Order states that its limits are intended to be flexible and tailored to the needs of each case:  "In cases involving several patent families, diverse technologies, disparate claims within a patent, or other unique circumstances, absent agreement of the parties, the court will consider flexibly whether circumstances warrant expanding the limits on asserted claims or prior art references."  As such, parties have routinely agreed to prior art limits that are higher than those in the Model Order.[6]  Fractus, however, has not been willing to modify the Model Order in view of all the foregoing circumstances, offering only a minimal deviation from the Model Order that does not address these unique issues and would have uncertain, and likely minimal, effect on the number of prior art references that Defendants may identify.[7]

Fractus's apparent concern for the worst-case scenario of "60 references per patent and up to 240 references total for the two families" is misguided.  As a practical matter, it is unlikely that every one of the six Defendant Groups will assert the maximum number of prior art references without there being any overlap whatsoever.  Fractus's worst-case scenario

---

[6] *See, e.g.*, *Realtime Adaptive Streaming LLC v. Cisco Sys., Inc.*, Order Focusing Patent Cls. and Prior Art to Reduce Costs, No. 6:17-cv-00591, Dkt. No. 62 (E.D. Tex. Mar. 6, 2018); *Oyster Optics, LLC v. Coriant Am. Inc.*, No. 2:16-cv-01302, Dkt. No. 174 (E.D. Tex. Oct. 23, 2017); *Artrex, Inc. v. Smith & Nephew, Inc.*, Order Focusing Patent Cls. and Prior Art, No. 2:15-cv-01047, Dkt. No. 80 (E.D. Tex. Feb. 1, 2016); *Ericsson Inc. v. Apple Inc.*, Order Focusing Patent Cls. and Prior Art, No. 2:15-cv-00290, Dkt. No. 98 (E.D. Tex. Nov. 6, 2015); *Ericsson Inc. v. Apple Inc.*, Order Focusing Patent Cls. and Prior Art, No. 2:15-cv-00293, Dkt. No. 68 (E.D. Tex. Aug. 31, 2015).

[7] Fractus suggests that it made a concession to Defendants "by requiring Fractus to narrow its claims earlier than contemplated in this court's model order."  To the contrary, this was not a concession but rather a recognition that, because the scheduling order in this case set the P.R. 4-5(a) deadline to fall before the P.R. 4-4 deadline, it would be more efficient for all parties and the Court if the Preliminary Election of Asserted Claims were served no later than Fractus's opening claim construction brief.

numbers are puzzling in any event, since, under Defendants' proposal, the entire universe of prior art would have already been reduced in the Preliminary Election to only 24 references per patent and 40 total references per patent family; thus, there would not even be that many references available to Defendants at the Final Election.  Regardless, as this Order contemplates, Defendants anticipate that claims and prior art would be further narrowed before trial, and to the extent Fractus believes that Defendants have collectively asserted too many prior art references after the Final Election, Fractus still may seek relief from the Court as appropriate.

For the foregoing reasons, Defendants respectfully seek the modestly higher prior art limits as set forth herein.