# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| FRACTUS, S.A.,<br><br>　　　　Plaintiff,<br><br>v. | ▮ |
| AT&T MOBILITY LLC,<br><br>　　　　Defendant, | Case No. 2:18-cv-00135-JRG<br><br>LEAD CASE |
| T-MOBILE US, INC., ET AL.,<br><br>　　　　Defendants, | Case No. 2:18-cv-00137-JRG |
| CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS,<br><br>　　　　Defendant, | Case No. 2:18-cv-00138-JRG |
| COMMSCOPE TECHNOLOGIES LLC and CELLMAX TECHNOLOGIES AB,<br><br>　　　　Intervenor-Defendants. | |

**PLAINTIFF FRACTUS, S.A.'S OPPOSED MOTION
<u>FOR LEAVE TO FILE AMENDED COMPLAINTS</u>**

## I.     Introduction

Pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, Fractus respectfully seeks leave of the Court to amend its complaints in the consolidated matters against Defendants AT&T Mobility LLC ("AT&T"), T-Mobile US, Inc. et al. ("T-Mobile"), Cellco Partnership d/b/a Verizon Wireless ("Verizon"), and Intervenor-Defendants CommScope Technologies LLC ("CommScope") and CellMax Technologies AB ("CellMax") (collectively "Defendants"). Fractus seeks this leave to formally add an allegation of compliance with the marking requirements of 35 U.S.C. § 287(a).  At the outset of the case, Fractus properly did not plead compliance with § 287(a) because it had not sold any patent-practicing products in the United States and had no reason to believe that any of its licensees had done so either.  This motion was made necessary by Defendants' late disclosure of facts that suggest a subsidiary of Fractus's licensee Samsung Electronics Co. Ltd, Samsung Telecommunications American LLP, Samsung Electronics Research Institute, and Samsung Semiconductor Europe GMBH (collectively "Samsung") may have sold to then-Defendant Sprint Communications Company, L.P. ("Sprint") under license base station antennas manufactured by other suppliers.  It was not until March 15, 2019, with one month left before the April 15 fact discovery deadline, that Defendants first provided notice of the relevant facts by way of a subpoena to Samsung.  (*See* Declaration of Gabriela Ruiz, ("Ruiz Decl.") attached as Exhibit A, Ex. 1.)  One week later, Sprint first produced documents relating to the alleged licensed nature of the sale, including its contracts with Samsung suggesting that the alleged sales could be subject to the Fractus license. ▮

▮

While Fractus does not concede that these late-disclosed allegations trigger § 287(a), it did undertake reasonable efforts to ensure compliance with the marking statute, and now moves to

amend its complaints to plead compliance with § 287(a).

The Court should allow these amendment under Rule 15. Fractus has not delayed in seeking the amendments. The amendments are important to ensure that Fractus can assert compliance at trial and is not barred from seeking certain pre-filing damages, and the amendments would not prejudice Defendants. To the contrary, Defendants have pursued vigorous discovery on the issue, including full inquiry into Fractus's negotiation of the Samsung agreement, its terms, whether Fractus was aware of or made inquiry into whether Samsung sold base station antennas, and Fractus's awareness of any licensed sales in the United States under the patents-in-suit—all the while aware of facts that had been withheld from Fractus and on which Defendants now seek to rely to show an alleged failure-to-mark. To be clear, Defendants are the ones who bear the burden of identifying specific unmarked products that allegedly practice the patents-in-suit. While Sprint only recently identified specific products, Defendants took ample discovery relating to Fractus's licensing agreement with Samsung and Fractus's marking practices. Under these circumstances, Defendants cannot claim any prejudice—they are not surprised by the amendments, and they have already conducted the discovery they would have conducted if Fractus had initially pled compliance with the marking provision of § 287(a).

The proposed amendments are attached as Exhibits B-D.[1] Because Fractus is seeking to amend its complaints, the revised versions reflect Fractus's previous narrowing of the case to remove (a) patents that Fractus no longer asserts, (b) allegations of induced infringement, and (c) Fractus's claim for injunctive relief.[2] Fractus respectfully requests that the Court grant leave for

---

[1] Redlined versions of the amended complaints are attached as Exhibits E-G.
[2] The amendments also correct a typographical error in Count 3 of the T-Mobile complaint, which incorrectly named AT&T instead of T-Mobile as the defendant that infringed the asserted patent.

Fractus to amend its complaints in the consolidated matters.

## II.     Factual Background

Fractus filed its complaints against AT&T, T-Mobile, Verizon, and Sprint on April 9, 2018. (*See* DE 1; Case No. 2:18cv-00137 DE 1; Case No. 2:18-cv-138 DE 1.) These complaints properly did not contain allegations that Fractus complied with the marking requirements of § 287(a) because, at that time, Fractus had no reason to believe that it was under any obligation to mark or ensure marking of any products with the numbers of the patents-in-suit. Fractus itself has never sold any products in the United States that practice the patents-at-issue. ▇

▇

▇

▇

In 2009, Fractus initiated litigation with Samsung Electronics Co., Ltd., among other parties, to enforce a portfolio of patents relating to individual antennas used in smartphones and other mobile devices. *Fractus, S.A. v. Samsung Elecs. Co., Ltd. et al.*, Case No. 6:09-cv-00203-LED-JDL (E.D. Tex. 2009). ▇

▇ That license was produced to Defendants in this litigation on October 25, 2018.

On April 8, 2019, Defendants took the deposition of Jordi Ilario, Fractus's 30(b)(6) witness on licensing and marking. Defendants specifically asked Mr. Ilario numerous questions about Fractus's licensing agreement with Samsung, including with respect to marking. ▇



On March 15, 2019, Sprint issued a subpoena to Samsung seeking information about specific sales of specific, named base station antennas by Samsung to Sprint. (Ruiz Decl., Ex. 1, at 8-9.) Before issuing the subpoena, neither Sprint nor any other Defendant identified any sales of allegedly licensed, patent-practicing, unmarked products. Sprint asserted boilerplate affirmative defenses, namely that "on information and belief … any claim for pre-lawsuit damages is barred, in whole or in part, for failure to comply with the marking notice and requirements of 35 U.S.C. § 287." (Doc. 118 at 30-31; Doc. 32 at 22; Doc. 143 at 34-35.)[4] On March 21, 2019, Sprint made a voluminous document production that included Sprint's agreements and other documents relating to its purchase of antennas from Samsung. Sprint provided no justification for its improper last-minute production. *See* DE 73, at 3 (requiring disclosure of relevant documents within a party's possession, custody, or control without awaiting a discovery request), DE 165 (setting February 8, 2019 deadline for substantial compliance with document production).

---

[4] AT&T, T-Mobile, and Verizon also asserted boilerplate defenses that failed to identify sales that allegedly licensed, patent-practicing, unmarked products. (*See* DE 138, at 36; DE 111, at 32; DE 30, at 23; DE 144, at 26; DE 116, at 21, DE 42, at 15; DE 117, at 28; DE 44, at 14.)

On April 11, 2019, Sprint produced the documents it subpoenaed from Samsung. These documents included purchase orders for antennas and a spreadsheet listing antennas that Samsung sold to Sprint. That same day, Sprint served its Second Supplemental Initial Disclosures which, for the first time, identified Samsung as having "Knowledge regarding sale of accused products to Sprint and marking, if any, of accused products."[5] The next day, T-Mobile, Verizon, and AT&T supplemented their disclosures asserting for the first time that Samsung sold base station antenna products in the United States that allegedly practice one or more claims of the patents-in-suit and that no such products were ever marked with any of the patents-in-suit. ███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████

Three days later, on April 18, 2019, Fractus sought Defendants' consent to amend its complaints to include an allegation that Fractus complied with the marking requirements of



§ 287(a), to the extent required, and have been meeting and conferring with Defendants since. This motion follows Defendants' refusal to agree to such an amendment.

### III.     Legal Standard

Under Rule 15 of the Federal Rules of Civil Procedure, leave to amend rests within the sound discretion of the trial court. *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002) (internal citations omitted). In exercising its discretion, the Court should "freely" give leave to amend when "justice so requires." Fed. R. Civ. P. 15(a)(2); *Lyn-Lea Travel Corp.*, 283 F.3d at 286. As the Fifth Circuit has explained, "[t]he policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981). Since Rule 15 "'evinces a bias in favor of granting leave to amend,' […], [the Court] must have a 'substantial reason' to deny a request for leave to amend." *Lyn-Lea Travel Corp.*, 283 F.3d at 286 (internal citations omitted). The Court may consider several factors, including undue delay, bad faith, undue prejudice to the opposing party, and futility of the amendment in deciding whether to allow an amendment. *Dussouy*, 660 F.2d at 598. The Court may also "weigh in the movant's favor any prejudice that will arise from denial of leave to amend." *Id.* The "mere passage of time need not result in refusal of leave to amend." *See id.* (granting leave to amend after dismissal of the action at the pre-trial conference and one week before the trial date). In fact, "[a]mendment can be appropriate as late as trial or even after trial." *Id.* As a general matter, "where the failure to include in the complaint a known theory of the case arises not from an attempt to gain tactical advantages but from a reasonable belief that the theory is unnecessary to the case, denial of leave to amend is inappropriate." *Id*. at 599 (emphasis added).

### IV. Argument

#### a. No Obligation To Plead Compliance With § 287(a)

§ 287(a) does not apply when a patentholder or its licensee has not sold patent-practicing products in the United States. *Wine Ry. Appliance Co. v. Enter. Ry. Equip. Co.*, 297 U.S. 387, 398 (1936) (construing predecessor statute), *see also Tex. Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1219 (Fed. Cir. 2002), *overruled on other grounds by Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (recognizing applicability to § 287(a)). It is the defendant's initial burden of coming forward to identify licensed, unmarked sales: "[A]n alleged infringer who challenges the patentee's compliance with § 287[a] bears an initial burden of production to articulate the products it believes are unmarked 'patented articles' subject to § 287[a]." *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1368 (Fed. Cir. 2017); *see also Salazar v. HTC Corp.*, No. 2:16-CV-01096-JRG-RSP, 2018 WL 2041732, at *2 (E.D. Tex. May 1, 2018). As *Arctic Cat* recognized, "Without some notice of what market products [defendant] believes required marking, [plaintiffs'] universe of products for which it would have to establish proof of compliance would be unbounded." *Arctic Cat*, 876 F.3d at 1368. "[P]ermitting infringers to allege failure to mark without identifying any products could lead to a large scale fishing expedition and gamesmanship." *Id*. At a minimum, the alleged infringer "need[s to] … put the patentee on notice that he or his authorized licensees sold specific unmarked products which the alleged infringer believes practiced the patent." *Id*.

Courts that have examined the issue directly have held that a patentholder is under no obligation to plead compliance with § 287(a) where it is unaware of any unmarked sales, unless and until the defendant has complied with its obligation to identify such sales. In *In re Mobile Telecomms. Techs.,* No. 16-MD-02722-LPS-CJB, 2017 WL 1053099, at *6 (D. Del. Mar. 20,

2017), the defendant raised speculation that a predecessor-in-interest or licensee may have sold patent-practicing products, but the Court found that such speculation was insufficient to trigger the plaintiff's obligation to plead compliance with § 287(a). The Court further explained that "[f]acts may arise during discovery that may require [the plaintiff] to seek leave to amend its complaint, but it is not required to do so now based on speculation as to what may be revealed later." *Id.* In *Int'l Bus. Machines Corp. v. Priceline Grp. Inc.*, 271 F. Supp. 3d 667, 688 (D. Del. 2017), the court denied summary judgment alleging that plaintiff had failed to plead compliance with the statute, holding that the obligation was not triggered until the defendant came forward to identify unmarked licensed products. *Id.*, at 887 (addressing IBM's contention that to hold otherwise would require it to "conduct a seemingly infinite analysis of its licensees' products."); *see also Broadcom Corp. v. Agere Sys. Inc.*, No. CIV.A. 04-2416, 2004 WL 2009320, at *3-4 (E.D. Pa. Sept. 8, 2004) (finding plaintiffs need not plead compliance with § 287(a) because there existed a genuine dispute regarding whether plaintiffs' predecessor's products practiced the patent at issue).

The analysis in *Lexos Media IP, LLC v. Jos. A. Bank Clothiers, Inc.* is also instructive:

> It is Defendant who bears the initial burden of production to 'put the patentee on notice that he or his authorized licensees sold specific unmarked products which the alleged infringer believes practice the patent.' *Arctic Cat Inc.*, 876 F.3d 1350 at 1368. Plaintiff notes that, as of the time the [First Amended Complaint']s filing, Defendant had not yet identified what licensees were at issue, or which 'specific unmarked products' those licensees sold that Defendant believes read on the patents-in-suit…. Thus, according to Plaintiff, it is not required to address any such unnamed licensees' unnamed products in the FAC, since Defendant had not yet met its burden of production on this front. … This seems right to the Court. After all, if certain products are not yet rightly a part of the case (because Defendant had not yet met its burden of production to specifically identify them), it stands to reason that Plaintiff would not have had to plead facts relating to those products.

*Lexos Media IP, LLC v. Jos. A. Bank Clothiers, Inc.*, No. CV 17-1317-LPS-CJB, 2018 WL 2684104, at *2 (D. Del. June 5, 2018), *report and recommendation adopted by* No. CV 17-1317-

LPS-CJB, 2018 WL 4629184 (D. Del. Sept. 27, 2018). The same pattern is found here: it was not until discovery—in fact, until the end of discovery—that Defendants came forward with facts triggering Fractus's obligation to plead compliance with the marking statute.

### b. No Delay in Seeking Leave to Amend

Fractus did not previously plead compliance with § 287(a) because Fractus had not sold any patent-practicing products in the United States and was unaware of any facts suggesting that its licensees had done so until the very end of discovery, when Defendants belatedly came forward to identify products they allege trigger the obligation. *See Arctic Cat Inc.*, 876 F.3d at 1368 (Fed. Cir. 2017) (alleged infringer has the initial burden of identifying unmarked products that it alleged should have been marked). Despite having the affirmative obligation to produce relevant documents,[7] Sprint delayed in producing the documents that now necessitate the proposed amendments. In *Raytheon,* the Court considered a similar situation in which the defendants' delay in producing an obviously relevant document delayed the plaintiff's amendment of its complaint. *Raytheon Co. v. Indigo Sys. Corp.*, No. 4:07-CV-109, 2008 WL 3852715, at *2 (E.D. Tex. Aug. 14, 2008). The Court found good cause to allow amendment of a complaint under the higher Rule 16 standard, where the plaintiff showed that it was unable to make the amendment until after it received the documents through discovery. *Id.*, at *3; *see also Mars, Inc. v. Trurx LLC*, No. 6:13-CV-526-RWS-KNM, 2016 WL 4034803, at *3 (E.D. Tex. Mar. 14, 2016), *report and recommendation adopted by* No. 6:13-CV-526-RWS-KNM, 2016 WL 4061981 (E.D. Tex. Apr. 29, 2016) (allowing amendments under the higher Rule 16 standard after the close of discovery

---

[7] According to the Court's Discovery Order, the parties must "produce or permit the inspection of all documents, electronically stored information, and tangible things … that are relevant to the pleaded claims or defenses involved in the action" without awaiting any specific discovery request. (DE 73 at 3.)

because the plaintiff was unaware of the issue requiring amendment until after its damages expert had the opportunity to review discovery materials). The Court in *Raytheon* noted that the defendants did not offer an explanation as to why they waited until the eleventh hour to produce documents that they relied on to establish a defense and concluded that the motion to amend "easily could have been forestalled by the Defendants' timely production of obviously relevant documents." 2008 WL 3852715, at *2. The same is true here. Sprint was well aware that it had purchased antennas from Samsung and that Samsung is Fractus's licensee. Defendants could have also easily ascertained and identified any antennas that Defendants allege should have been marked. Despite possessing this knowledge since at least October 2018, Sprint did not put Fractus on notice of its allegations that Samsung sold specific unmarked products which Sprint believes practiced the patent until the Second Supplemental Initial Disclosures on April 11, 2019. Thus, any delay in moving to amend the complaints to include a marking allegation is due to Sprint's delay in carrying its burden of identifying allegedly unmarked products.

Although arising from disclosures after the close of discovery, this Court's opinion in *Lake Cherokee Hard Drive Techs. v. Marvell Semiconductor, Inc.*, is also instructive. In *Lake Cherokee*, this Court precluded the defendant's marking theory under § 287(a) because the defendant failed to disclose the theory until well after the close of discovery. *Lake Cherokee*, 964 F. Supp. 2d 653, 659 (E.D. Tex. 2013). While recognizing that the patentee has the burden of pleading and proving compliance with § 287(a), the Court declined to reach the merits of the defendant's contentions on marking because the defendant failed to comply with its discovery obligations. More specifically, under Rule 37, the Court precluded the defendant's evidence of non-compliance with § 287(a). The Court noted that a simple statement in the defendant's answer that the plaintiff's claims were limited by § 287(a) was insufficient to give the plaintiff a meaningful opportunity to conduct

discovery to test the defendant's marking theory. On the same principles, Fractus should be afforded the opportunity to amend its complaints here.

### c. Rule 15 Pleading Requirements

As set out above, the Court may consider several factors under Rule 15(a)(2), including undue delay, bad faith, undue prejudice to the opposing party, and futility of the amendment. *Dussouy*, 660 F.2d at 599. Moreover, "where the failure to include in the complaint a known theory of the case arises not from an attempt to gain tactical advantages but from a reasonable belief that the theory is unnecessary to the case, denial of leave to amend is inappropriate." *Id*. All factors here support leave to amend. Namely, Fractus moved expeditiously and in good faith to amend its complaint upon Sprint's late identification of allegedly unmarked products that practice the patents-in-suit; Defendants will not be prejudiced by the proposed amendments, as the proposed amendments come as no surprise to Defendants; and Defendants pursued ample discovery regarding Fractus's licensing agreement with Samsung and Fractus's marking practices. *See Lyn-Lea Travel Corp.*, 283 F.3d at 286 (granting leave to amend answer after the filing of motions for summary judgment, long after the deadlines for amending pleadings had expired, where opposing party was not deprived of discovery on the issue); *Stutts v. Tex. Saltwater Fishing Magazine, Inc.*, No. 6:13-CV-10, 2014 WL 12599344, at *2 (S.D. Tex. Jan. 8, 2014) (finding no prejudice in Rule 15 amendment where defendant raised the issue requiring amendment during discovery, thereby indicating the defendant's knowledge of the issue). Finally, the proposed amendments would not be futile for the reasons set forth in Section IV(b)(a) above.

### i. Requested Amendments Are Not Futile

A patentee's marking of its own products must ordinarily be "substantially consistent and continuous" to provide constructive notice under § 287(a). *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098,

1111 (Fed. Cir. 1996). But when a patentee licenses its invention to an unrelated third party, "it is often more difficult for a patentee to ensure compliance with the marking provisions." *Id.* Accordingly, when (as is the case here) the failure to mark is caused by someone other than the patentee, compliance with section 287 is governed by a "rule of reason," under which the fact finder must examine whether the patentee undertook "reasonable efforts to ensure compliance with the marking requirements." *Id.* at 1111-12. To the extent that the Samsung sales triggered Fractus's burden to plead and prove compliance with § 287(a), Fractus will show that it took reasonable efforts, under the circumstances surrounding execution of the settlement agreement, to ensure compliance. *See id.* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Even if that were not the case, courts have recognized the challenges of convincing a litigation adversary to mark. When entering into a settlement license, settling parties generally do not concede liability. It is only natural that parties who refuse to admit infringement would also refuse to mark. Therefore, requiring settlement licenses to include a marking requirement would "have extremely deleterious effects on patent case settlements when there is more than one infringer." *Wokas v. Dresser Indus., Inc.*, 978 F. Supp. 839, 848 (N.D. Ind. 1997). In short, under the circumstances surrounding execution of the licensing agreement between Fractus and Samsung, Fractus used reasonable efforts to ensure marking. It would therefore not be futile for Fractus to amend its complaints and offer proof of its compliance with § 287(a).

### ii. No Prejudice From Requested Amendments

As set out in greater detail in Section II above, Defendants took ample discovery on the

marking issue.[8] In summary, Sprint took Samsung's deposition (and attorneys for AT&T, T-Mobile, and CommScope attended), Defendants obtained documents from Samsung, Defendants took testimony from Fractus's 30(b)(6) on licensing and marking and specifically asked about the marking of any Fractus products and Fractus's licensing agreement with Samsung, and Defendants propounded interrogatories relating to marking. Given that Defendants repeatedly sought discovery from Fractus and Samsung on the marking issue, Defendants will not be required to engage in additional discovery and thus cannot show prejudice. *See, e.g., Mars v. Trurx*, 2016 WL 4034803, at *3 (granting leave to amend to add co-plaintiff after the close of discovery where the record showed that the defendants had repeatedly sought discovery from the co-plaintiff and therefore would not need to engage in additional discovery).

As importantly, Defendants cannot be prejudiced by the proposed amendments because the allegations which now necessitate the proposed amendments have been within Sprint's knowledge since at least October 2018 and therefore presumably accessible to Defendants.

### V. Other Amendments

Fractus's other proposed changes simply reflect the prior narrowing of the case under this Court's pretrial procedures, namely to remove (a) patents that Fractus no longer asserts, (b) allegations of induced infringement, and (c) the claim for injunctive relief. Defendants oppose amendment unless Fractus dismisses the patent claims with prejudice, which is neither necessary nor warranted under the Court's process for narrowing claims.

### VI. Conclusion

For the reasons set forth herein, Fractus respectfully moves the Court for leave to file the

---

[8] During the meet and confer process, Defendants did not identify additional discovery they would need to take relating to compliance with § 287(a).

proposed amended complaints attached as Exhibits B-D.

Dated: May 9, 2019                              Respectfully submitted,

*/s/ Michael Ng*
Michael Ng
California State Bar No. 237915 (Lead Attorney)
Daniel A. Zaheer
California State Bar No. 237118
Michael M. Rosen
California State Bar No. 230964
Luke J. Burton
California State Bar No. 301247
michael.ng@kobrekim.com
daniel.zaheer@kobrekim.com
michael.rosen@kobrekim.com
luke.burton@kobrekim.com
**KOBRE & KIM LLP**
150 California Street, 19th Floor
San Francisco, CA 94111
Telephone: 415-582-4800
Facsimile: 415-582-4811

Hugham Chan
Washington DC Bar No. 1011058
**KOBRE & KIM LLP**
1919 M Street, NW
Washington, DC 20036
Telephone: 202-664-1956
Facsimile: 202-510-2993
E-mail:hugham.chan@kobrekim.com

George Stamatopoulos
New York State Bar No. 5163340
Benjamin J.A. Sauter
New York State Bar No. 4691515
george.stamatopoulos@kobrekim.com
benjamin.sauter@kobrekim.com
**KOBRE & KIM LLP**
800 Third Avenue

New York, NY 10022
Telephone: 646-658-4972
Facsimile: 212-488-1220

Adriana Riviere-Badell
Florida State Bar No. 30572
Gabriela Ruiz
Florida State Bar No. 46844
Joshua Kushner
Florida State Bar No. 93597
adriana.riviere-badell@kobrekim.com
gabriela.ruiz@kobrekim.com
Joshua.kushner@kobrekim.com
**KOBRE & KIM LLP**
201 South Biscayne Boulevard, Suite 1900
Miami, Florida 33131
Telephone: 305-967-6100
Facsimile: 305-967-6120

*Attorneys for Plaintiff*
Fractus, S.A.

## CERTIFICATE OF SERVICE

I certify that the foregoing document was served by electronic mail on May 9, 2019, and has been served on all counsel who have consented to electronic service.

*/s/ Michael Ng*

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Eastern District of Texas Local Rule CV-7(I), counsel have met and conferred, in a good faith effort to resolve all the issues regarding Fractus's Motion. More specifically, counsel for Fractus met and conferred with counsel for each Defendant by email and by phone, beginning on April 18, 2019, and concluding on May 6, 2019. On April 18, 2019, counsel for Fractus sent an email to counsel for all Defendants, attaching proposed amended complaints and

outlining Fractus's proposal to narrow the asserted patents, eliminate claims for induced infringement, drop Fractus's claim for injunctive relief, amend certain typos, and include an allegation that Fractus complied with the marking requirements of 35 U.S.C. § 287(a). Counsel for Fractus subsequently conferred by email, voicemail, and phone with:

- Counsel for T-Mobile on April 25, 2019 and May 1, 2019, who indicated that T-Mobile opposes any amendment to include an allegation that Fractus complied with the marking requirement of 35 U.S.C. § 287(a) and opposes dropping counts from the complaint unless accompanied by a dismissal of the counts with prejudice.

- Counsel for Verizon on April 19, 2019 and May 1, 2019, who indicated that Verizon did not oppose dismissal of Fractus's theories of induced infringement and claim for injunctive relief, but otherwise opposed the motion.

- Counsel for AT&T on April 25, 2019, April 28, 2019, May 2, 2019, and May 6, 2019, who indicated that AT&T opposes amending to include an allegation that Fractus complied with the marking requirement of 35 U.S.C. § 287(a) and opposes dropping counts from the complaint unless accompanied by a dismissal of the counts with prejudice.

- Counsel for CommScope on April 19, 2019, April 26, 2019, May 2, 2019, May 6, 2019, and May 7, 2019, who indicated that CommScope opposes amending to include an allegation that Fractus complied with the marking requirement of 35 U.S.C. § 287(a) and opposes dropping counts from the complaint unless accompanied by a dismissal of the counts with prejudice.

- Counsel for CellMax who indicated CellMax's opposition to the motion, absent agreement on a separate issue that the parties are continuing to discuss.

*/s/ Gabriela M .Ruiz*

## **CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that this document is being filed under seal pursuant to the Court's authorization in Section V.B.4 of the Protective order entered in this matter.

*/s/ Michael Ng*