**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| FRACTUS, S.A., | JURY TRIAL DEMANDED |
| Plaintiff, | ██████████████ |
| v. | |
| AT&T MOBILITY LLC, | Case No. 2:18-cv-00135-JRG |
| Defendant, | LEAD CASE |
| T-MOBILE US, INC., ET AL., | Case No. 2:18-cv-00137-JRG |
| Defendants, | |
| CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, | Case No. 2:18-cv-00138-JRG |
| Defendant, | |
| COMMSCOPE TECHNOLOGIES LLC and CELLMAX TECHNOLOGIES AB, | |
| Intervenor-Defendants. | |

**FRACTUS S.A.'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT OF NO PRE-SUIT DAMAGES**

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................. 1

II.  FRACTUS'S RESPONSE TO DEFENDANTS' STATEMENT OF ISSUES .. 2

III. FRACTUS'S RESPONSES TO DEFENDANTS' STATEMENT OF
     UNDISPUTED FACTS ..................................................................................... 2

IV.  BACKGROUND ................................................................................................. 7

V.   ARGUMENT ...................................................................................................... 9

   A.   Fractus Complied with § 287(a) ........................................................... 9

   B.   The ▮▮▮▮▮▮▮▮ License Does Not Raise a § 287(a) Issue ......................... 11

   C.   § 287(a) Does Not Bar Damages Incurred Before an Alleged Failure to Mark .. 13

VI.  CONCLUSION ................................................................................................. 15

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adrea, LLC v. Barnes & Noble, Inc.,*
    No. 13-CV-4137 JSR, 2015 WL 4610465 (S.D.N.Y. July 24, 2015).....................................14

*Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*,
  No. 14-CV-6544 (KAM) (GRB), 2018 WL 1525686 (E.D.N.Y. Mar. 27, 2018)......................14

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*,
    876 F.3d 1350 (Fed. Cir. 2017)...........................................................................................2, 11

*Elonex Phase II Power Mgmt. Litig.,*
    No. 01-082 GMS, 2002 WL 242363 (D. Del. Feb. 20, 2002) ................................................13

*Fractus, S.A. v. Samsung Elecs. Co., Ltd. et al.*,
    Case No. 6:09-cv-00203-LED-JDL (E.D. Tex. 2009)..............................................................8

*Halo Electronics v. Pulse Elecs., Inc.,*
    831 F.3d 1369 (Fed. Cir. 2016)............................................................................................12

*Invitrogen Corp. v. Evident Techs., Inc.*,
    No. 6:08-CV-163, 2008 WL 11348389 (E.D. Tex. Oct. 29, 2008) .........................................13

*Maxwell v. J. Baker, Inc.*,
    86 F.3d 1098 (Fed. Cir. 1996).............................................................................................1, 9

*Mobile Telecomms. Techs.*,
    No. 16-MD-02722-LPS-CJB, 2017 WL 1053099 (D. Del. Mar. 20, 2017)............................11

*Rotec Indus., v. Mitsubishi Corp.*,
    215 F.3d 1246 (Fed. Cir. 2000).............................................................................................12

*Tex. Digital Sys., Inc. v. Telegenix, Inc.*,
    308 F.3d 1193 (Fed. Cir. 2002).............................................................................................11

*WiAv Solutions LLC, v. Motorola, Inc.*,
    732 F. Supp. 2d 634 (2010) ............................................................................................13, 14

*Wine Ry. Appliance Co. v. Enter. Ry. Equip. Co.*,
    297 U.S. 387 (1936)..............................................................................................................11

*Wokas v. Dresser Indus., Inc.*,
    978 F. Supp. 839 (N.D. Ind. 1997) ..................................................................................10, 14

**Statutes**

35 U.S.C. § 287(a) ......................................................................................................... 1, 9, 11-15

## TABLE OF EXHIBITS

| Exhibit | | |
|---------|---|---|
| **Ex. A** | **Declaration of Gabriela Ruiz** | |
| | Ex. 1 to Declaration of Gabriela Ruiz | ██████ ██ ██████ ██ ██████ / ███████████████████ / ████████████ |
| | Ex. 2 to Declaration of Gabriela Ruiz | █████████████████████████ / ████████████ |
| | Ex. 3 to Declaration of Gabriela Ruiz | █████████████████████████ / █████████████████████████ / █████████████████████████ / █████████ |
| | Ex. 4 to Declaration of Gabriela Ruiz | ████████████████████ |
| | Ex. 5 to Declaration of Gabriela Ruiz | ██████ ██ ██████ ██ ██████ / ███████████████████████ / ████████████ |
| | Ex. 6 to Declaration of Gabriela Ruiz | ██████ █ ██████ ██████ ██████ / ████████████████████████ |
| | Ex. 7 to Declaration of Gabriela Ruiz | ██████ █ ██ ██████ █ ██████ / ████████████████ |
| | Ex.8 to Declaration of Gabriela Ruiz | ████████████████████ |
| **Ex. B** | **Declaration of Ruben Bonet** | |
| **Ex. C** | **Declaration of Jordi Ilario** | |

## I.   INTRODUCTION

The Court should deny Defendants'[1] motion for partial summary judgment seeking to preclude Plaintiff Fractus S.A. ("Fractus") from recovering all pre-suit damages under 35 U.S.C. § 287(a). First, because the alleged failure to mark was not by Fractus itself but rather under license, absolute compliance with the marking statute is not required. Instead, a patent holder is subject to the penalties of § 287(a) only if it failed to make "reasonable efforts" to ensure marking by licensees. *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996). Fractus acted reasonably to ensure marking, including by establishing policies and practices to ensure its commercial partners who sold products in the United States complied with the marking statute. However, many of Fractus's licenses were entered into in the litigation context, and in the smartphone market, in which products are rarely marked with a licensor's patent numbers. In those circumstances, Fractus was unable to persuade its adversaries to agree to mark. ▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Under these circumstances, a jury is entitled to conclude that Fractus's efforts were reasonable.

---

[1] "Defendants" are T-Mobile USA, Inc., T-Mobile U.S. (collectively, "T-Mobile"), Cellco Partnership d/b/a Verizon Wireless ("Verizon"), CommScope Technologies, LLC ("CommScope"), and Cellmax Technologies AB ("Cellmax").

Second, Defendants now contend that Fractus "cannot demonstrate that it met the marking requirements for the allegedly ███████████████████████." (DE 370 at 9.) But as "an alleged infringer who challenges the patentee's compliance with § 287[a]," Defendants "bear[] an initial burden of production to articulate the products [they] believe[] are unmarked 'patented articles' subject to § 287[a]." *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1368 (Fed. Cir. 2017). At no point during discovery did Defendants identify any ███████████████████████ they allege were unmarked and sold or offered for sale in the United States. They cannot now allege a failure to mark based on ██████ products for which they failed to meet their initial burden of production. In any event, there is no factual basis for Defendants' position. ██████ was not selling or offering for sale base station antennas in the United States.

Finally, Defendants are simply wrong that *all* pre-filing damages should be excluded.  Even if they were to prevail on a failure-to-mark defense, Defendants only identified allegedly unmarked sales starting ████████ The law is clear that patentees may recover damages from *before* the period of alleged non-compliance with the marking statutes. In sum, the Court should not deprive Fractus of its right to a jury trial on the issue of pre-suit damages.

## II.    FRACTUS'S RESPONSE TO DEFENDANTS' STATEMENT OF ISSUES

Fractus disputes Defendants' Statement of Issues to Be Decided Because Fractus has evidence that it complied with its marking obligations before filing these cases.

## III.    FRACTUS'S RESPONSES TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

1.    No dispute.

2.    No dispute.

3.    Fractus does not dispute that it has granted over ████████████████ ████████████████████████ Fractus disputes that it failed to take reasonable efforts

to ensure marking as part of the ██████████████████████. Fractus entered into the

licensing agreement with ████████ without knowledge that ████████ would make or resell base

station antennas and was unaware until late in discovery that ████████ purportedly made or sold

base station antennas. (Ilario Decl, at ¶ 4.) Even if Fractus could have been aware that ████████

██████████████████████████████████, it would not have been clear to Fractus that

the sales could fall under the ██████████████████████. Fractus also disputes that none

of its license agreements require licensees to mark products with any Fractus patent number, as a

licensing agreement between ██████████████████████████, requires marking.[2] (Ruiz

Decl, Ex. 1, at 5.)

4.     Fractus does not dispute that it did not require licensees ██████████████ to mark

products with the patents in suit.

5.     No dispute.

6.     No dispute.

7.     No dispute.

8.     No dispute.

9.     Fractus disputes that it had knowledge that ██████████████████████████

████████████████████████ before or at the time that ████████████████████

██████████████████████

10.     Fractus disputes that it had knowledge that ██████████████████████████

████████████████████████ at any time prior to the near close of discovery in these

consolidated cases. (*Id.*)

---

[2] The ████████ agreement did not provide a license to the patents-in-suit or Fractus's other base
station antenna patents. (Bonet Decl., at ¶ 10.)

11.     Fractus does not dispute that ████████████████████████████ ████████████████████████████████████████████████████.

12.     Fractus does not dispute that ████████████████████████████ ████████████████████████████████████████████████████.

13.     Fractus does not dispute that ████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████.

14.     Fractus disputes that it would have been reasonable to demand that ████████ mark as part of the ██████████████████████████. Fractus anticipated that ████████ would sell handsets incorporating handset antennas (rather than base station antennas), and Fractus's understanding is that the industry norm is not to mark handsets and handset components, including antennas. (Ilario Decl., at ¶ 5.) Also, in Fractus's experience, ████████████████████████████████████ ██████████████████████████████████████.

Fractus has been in the antenna industry since 1999 and has significant industry knowledge, including knowledge about the market for handset antennas. (*Id.*, at ¶ 3.) In its experience, handset manufacturers rarely mark handsets and handset components (including antennas) with patent numbers. (*Id.*, at ¶ 6.) To confirm its understanding of the industry practice, in June of 2019, Fractus visually inspected five of the best-selling handsets from 2013 and found that none of the handset components (including antennas) or user manuals were marked with patent numbers.[3] (*Id.*, at ¶ 7.) Nevertheless, where possible, Fractus has undertaken significant efforts to ensure its

---

[3] Fractus visually inspected the Samsung Galaxy S4, the Apple iPhone 4s, the Samsung Galaxy S3, the Samsung Galaxy Note 2, and the Samsung Galaxy Note 3. Fractus also inspected photographs of the packaging for the Apple iPhone 4s, the Samsung Galaxy S3, and the Samsung Galaxy Note 2. To select the best-selling models, Fractus relied on data from International Data Corporation. (Ilario Decl., at ¶ 8.)

products were marked. (*Id.*, at ¶ 9; *see also infra* Section IV, at 7.)

15.     Fractus does not dispute that the ███████████████████████████████ ███████████████████. Fractus disputes that Fractus has not otherwise presented evidence of marking. Fractus marks its own products, either on the antenna itself when the size of the antenna permits marking, or on antenna reels and accompanying data sheets and user manuals. (Ilario Decl., at ¶ 10). Despite industry norm, after the issuance of Fractus's first U.S. handset patents, ███████████████████████████████████████████████████████████████████ As set forth in Section IV *infra*, Fractus has undertaken significant efforts to ensure its products were marked, where possible.

16.     Fractus asserted privilege over pre-suit investigations, *but only to the extent that any part of the investigations were directed by counsel*. In fact, during the deposition of Jordi Ilario, Fractus's counsel explicitly advised Defendants' counsel that Fractus was withdrawing the instruction not to answer questions about Fractus's investigation into whether ████████ sells base station antennas. (Ruiz Decl., Ex. 2, at 151:9-22.) Defendants' counsel subsequently asked a question that solicited testimony about an earlier investigation in ████████████████████ and chose not to continue asking questions about Fractus's investigations into ████████ business, despite Mr. Ilario explaining that his response about the ████████ time frame was only "one piece" of Fractus's investigation. (*Id.*, at 153:7-21.)  Mr. Ilario also testified that he and Marta Barba looked into whether ████████ sold base station antennas using public information and that Fractus determined that ████████ did not sell base station antennas. (*Id.*, at 67:5-22; 228:22-229:4.)

In interrogatory responses, Fractus stated that ███████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████

██████████████████████████

17.     Fractus disputes that it has not conducted any investigation into ████████ need to

mark products following the execution of the ████████ License. In its regular course of business,

Fractus ████████████████████████████████████████████████████████████

████████████████████████████████████

18.     No dispute.

19.     No dispute.

20.     Fractus does not dispute that ████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████

21.     No dispute.

22.     Fractus does not dispute that the ████████████████████████████████████

████████████████████████

23.     Fractus disputes that it has the burden to present evidence that any of the ████████

████████ antennas were marked with the Asserted Patents. Defendants have the burden of

identifying specific antennas that they believe practice the patent and were not marked. Since

Defendants have not carried that burden, Fractus has no obligation to prove compliance with

marking. In any event, ████████████████████████████████████████████████████

████████████████████████████████████

24.     Fractus does not dispute that it was unaware of any product to which a requirement

of marking with the numbers of the patents-in-suit might apply until near the close of discovery in

this case when ████████████████████████████████████████████████████████████

████████████████████

25.    No dispute.

26.    No dispute.

## IV.    BACKGROUND

Fractus is a Spanish research, product development, and licensing company focused on multiband antennas technologies. (Bonet Decl., at ¶ 4.)  From the beginning of its introduction of products to the international market, the company has undertaken significant efforts to ensure that its own products are marked with its relevant patent numbers, whenever commercially feasible. █

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

Fractus has never sold any products in the United States that practice the patents-in-suit. (*Id*., at ¶ 12.) It therefore had no obligation to mark any products practicing those patents. ████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████  ████████████████████

████████████████████████████████

      In 2009, Fractus initiated litigation with Samsung Electronics Co., Ltd., among other parties, to enforce a portfolio of patents relating to individual antennas used in smartphones and other mobile devices.[4] The litigation did not include the patents-in-suit. (Ilario Decl., at ¶ 13.) Following a successful trial, and during appeal, █████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████

      On March 15, 2019, former ████████████████████████

████████████████████████████████████

████████████████Before issuing the subpoena, neither Sprint nor any other Defendant identified any sales of allegedly licensed, patent-practicing, unmarked products. Sprint had asserted only boilerplate affirmative defenses. (DE 118 at 30-31; 32 at 22; 143 at 34-35.)[5] ███████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

---

[4] *Fractus, S.A. v. Samsung Elecs. Co., Ltd. et al.*, No. 6:09-cv-00203-LED-JDL (E.D. Tex. 2009).
[5] AT&T, T-Mobile, and Verizon asserted similar boilerplate defenses. (*See* DE 138, at 36; DE 111, at 32; DE 30, at 23; DE 144, at 26; DE 116, at 21, DE 42, at 15; DE 117, at 28; DE 44, at 14.)

███████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████ The next day—the second-to-last business day before the

end of the fact discovery period—T-Mobile, Verizon, and AT&T supplemented their disclosures

asserting for the first time that ████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████. On April 15, 2019 (the last day of fact discovery),

Sprint took the deposition of ████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████  ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████

## V. ARGUMENT

### A. Fractus Complied with § 287(a)

When a patentee licenses its invention to an unrelated third party, "it is often more difficult

for a patentee to ensure compliance with the marking provisions." *Maxwell*, 86 F.3d at 1111.

Accordingly, when the failure to mark is caused by someone other than the patentee, the patentee

---

[6] ███████████████████████████████████████████████████████████████

must show it undertook "reasonable efforts to ensure compliance with the marking requirements." *Id.* at 1111-12. Fractus made reasonable efforts, under the circumstances surrounding execution of the settlement agreement, to ensure compliance. Fractus researched whether █████████ or any of its subsidiaries engaged in sales of base station antennas or indicated any future intent to go into the business, and concluded ██████████████████ (*See supra* at 5, ¶ 16.) To confirm its understanding that the industry norm was no marking of handset components, in June 2019, Fractus visually inspected five of the best-selling handsets from 2013 and found that none of the handset components (including antennas) or user manuals were marked with patent numbers. (Ilario Decl., at ¶ 7.) Given its well-founded understanding of the industry norm, Fractus did not require a marking provision in the ████████████████████████

Even setting aside industry norms, courts have recognized the challenges of convincing a litigation adversary to mark. When entering into a settlement license, settling parties generally do not concede liability. It is only natural that parties who refuse to admit infringement would also refuse to mark. Therefore, requiring settlement licenses to include a marking requirement would "have extremely deleterious effects on patent case settlements when there is more than one infringer." *Wokas v. Dresser Indus., Inc.*, 978 F. Supp. 839, 848 (N.D. Ind. 1997). ██████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████ Under these circumstances, it was reasonable for Fractus not to require marking.

**B.   The ████████████ License Does Not Raise a § 287(a) Issue**

    *i.   Defendants Have Not Met Their Burden of Production*

Section 287(a) does not apply when a patentholder or its licensee have not sold patent-practicing products in the United States. *Wine Ry. Appliance Co. v. Enter. Ry. Equip. Co.*, 297 U.S. 387, 398 (1936) (construing predecessor statute), *see also Tex. Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1219 (Fed. Cir. 2002), *overruled on other grounds by Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (recognizing applicability to § 287(a)). It is the defendant's initial burden of coming forward to identify licensed, unmarked sales: "[A]n alleged infringer who challenges the patentee's compliance with § 287[a] bears an initial burden of production to articulate the products it believes are unmarked 'patented articles' subject to § 287[a]." *Arctic Cat Inc.*, 876 F.3d at 1368. As *Arctic Cat* recognized, "Without some notice of what market products [defendant] believes required marking, [plaintiffs'] universe of products for which it would have to establish proof of compliance would be unbounded." *Id.* "[P]ermitting infringers to allege failure to mark without identifying any products could lead to a large scale fishing expedition and gamesmanship." *Id.* At a minimum, the alleged infringer "need[s to] … put the patentee on notice that he or his authorized licensees sold specific unmarked products which the alleged infringer believes practiced the patent." *Id.*

Courts that have examined the issue directly have held that a patentee is under no obligation to plead or prove compliance with § 287(a) where it is unaware of unmarked sales, unless and until the defendant has complied with its obligation to identify such sales. In *In re Mobile Telecomms. Techs.*, the defendant raised speculation that a predecessor-in-interest or licensee may have sold patent-practicing products, but the Court found that such speculation was insufficient to trigger the plaintiff's obligation to plead compliance with § 287(a). No. 16-MD-02722-LPS-CJB, 2017 WL

1053099, at *6 (D. Del. Mar. 20, 2017).

Even at this late stage of summary judgment briefing, Defendants have not carried their burden of identifying specific antennas they believe were unmarked and ██████ sold or offered for sale in the United States. Consequently, Fractus has no burden to plead or prove compliance with § 287(a) with respect to ██████.

   ii.      ██████ *Did Not Sell Or Offer To Sell Antennas In the United States*

██████ did not sell or offer for sale any unmarked products in the United States that practice the patents in suit. (Bonet Decl., at ¶ 13.) Defendants argue that "██████ offered for sale in the U.S. the jointly-developed products" and that "Fractus has offered no evidence that those allegedly practicing products were marked pursuant to § 287(a)." (DE 347 at 9.) Defendants' statement is based on the following testimony from Fractus's CEO:

██████████████████████████████████████████

██████████████████

This testimony, however, does not provide evidence of an "offer to sell." As a general matter, the Federal Circuit interprets "offer to sell" under the patent infringement statute according to its ordinary meaning in contract law. *Rotec Indus., v. Mitsubishi Corp.*, 215 F.3d 1246 (Fed. Cir. 2000).[7] As the Court explained in *Halo Electronics v. Pulse Elecs., Inc.*, "[a]n 'offer to sell' generally occurs when one 'communicate[s] a manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." 831 F.3d 1369, 1378 (Fed. Cir. 2016) (internal citations omitted). Accordingly, the "offer must be sufficiently definite to create the power of acceptance, otherwise it will be considered a mere solicitation for offers." *Invitrogen Corp. v. Evident Techs., Inc.*, No. 6:08-CV-

---

[7] The Court interpreted "offer to sell" liability under 35 U.S.C. § 271(a).

163, 2008 WL 11348389, at *3 (E.D. Tex. Oct. 29, 2008).

The statement that "████ was trying to sell" does not provide evidence of a sufficiently definite offer that would create the power of acceptance under black letter contract law. In fact, ████ did not offer products for sale in the United States. At the time, ████



For this reason alone, Defendants' argument that ████ triggered § 287(a)'s marking requirement fails.

### C.  § 287(a) Does Not Bar Damages Incurred Before an Alleged Failure to Mark.

Section 287(a) does not bar recovery of damages *prior* to an alleged failure to mark. *WiAv Solutions LLC, v. Motorola, Inc.*, 732 F. Supp. 2d 634 (2010). In *WiAv Solutions*, the owner of a wireless communication traffic patent brought an infringement action against its competitors. In ruling on the alleged infringer's motion for partial summary judgment of no pre-suit damages, the Court explicitly held that a patentee is not precluded from collecting damages for a period in which marking was not required, even if the requirements of the marking statute were later triggered and the patentee failed to comply. *Id.*, at 639-40. Similarly, in *In re Elonex Phase II Power Mgmt. Litig.*, the alleged infringer moved for partial summary judgment of no pre-suit damages on the

grounds that the patentee failed to mark the patented product. No. 01-082 GMS, 2002 WL 242363, at *1 (D. Del. Feb. 20, 2002), *amended*, No. C.A. 01-082 GMS, 2002 WL 433614 (D. Del. Mar. 20, 2002). The Court denied the motion for partial summary judgment because an issue of fact existed as to whether the patentee and its licensees had not sold or manufactured the patented product during a portion of the time before the licensee's failure to mark. *Id.*; *see also Wokas v. Dresser Indus., Inc.*, 978 F. Supp. 839 (N.D. Ind. 1997) (infringer liable for infringement committed before patentee's licensee began shipping unmarked goods); *Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*, No. 14-CV-6544 (KAM) (GRB), 2018 WL 1525686 (E.D.N.Y. Mar. 27, 2018) (internal citations omitted) (Section 287(a) "does not limit damages for a period 'during which the marking statute is not triggered, even if it later is triggered and the patentee fails to mark.'").

Defendants cite a single unpublished case, *Adrea, LLC v. Barnes & Noble, Inc.*, for the opposite proposition. *Adrea, LLC v. Barnes & Noble, Inc.*, No. 13-CV-4137 JSR, 2015 WL 4610465, at *3 (S.D.N.Y. July 24, 2015). The reasoning in *Adrea* is unpersuasive, however. The Court engages in brief analysis and concludes that the plain language of § 287(a) bars all pre-suit damages, including those incurred before any obligation to mark attached. *Id.*[8] In *WiAV*, meanwhile, the Court explained that § 287(a) is ambiguous because the language "[i]n the event of failure so to mark…" does not "define the period of time covered by the statute. 732 F. Supp. at 639. The Court reasoned that enforcing the statute to exclude all pre-suit damages "penalizes the patentee for failing to comply with a statute that the patentee was not required to comply with

---

[8] According to Westlaw's Citing References function, since *Adrea* was decided in 2015, no court has relied on it for the proposition that a failure to mark bars all pre-suit damages. Counsel recognizes that there may have been opinions or orders that rely on *Adrea*, but are not available through Westlaw's Citing References.

in the first place." *Id*. As the Court concluded, such an interpretation of the statute "is simply unreasonable." *Id*.

Here, Defendants have failed to meet their burden of identifying any failure on Fractus's behalf to comply with § 287(a) prior ██████████     At the very ████████████████████████

████████████████████████████████████████████████     Therefore, even if Defendants prevail on a failure-to-mark defense, only damages between ████████████

████████████████████████████████████████ and the April 9, 2018 filing of this case could be excluded. For this reason alone, the Court should deny Defendants' motion for partial summary judgment to exclude all pre-suit damages.

## VI.    CONCLUSION

For the foregoing reasons, Fractus respectfully requests that the Court deny Defendants' motion.

Dated: June 25, 2019                    Respectfully submitted,

*/s/ Michael Ng*
Michael Ng
California State Bar No. 237915 (Lead Attorney)
Daniel A. Zaheer
California State Bar No. 237118
Michael M. Rosen
California State Bar No. 230964
michael.ng@kobrekim.com
daniel.zaheer@kobrekim.com
michael.rosen@kobrekim.com
**KOBRE & KIM LLP**
150 California Street, 19th Floor
San Francisco, CA 94111
Telephone: 415-582-4800
Facsimile: 415-582-4811

Hugham Chan

Washington DC Bar No. 1011058
Kimberly Perrotta Cole
Washington DC Bar No. 495574
hugham.chan@kobrekim.com
kimberly.cole@kobrekim.com
**KOBRE & KIM LLP**
1919 M Street, NW
Washington, DC 20036
Telephone: 202-664-1956
Facsimile: 202-510-2993

George Stamatopoulos
New York State Bar No. 5163340
Benjamin J.A. Sauter
New York State Bar No. 4691515
Steven W. Perlstein
New York State Bar No. 2982478
george.stamatopoulos@kobrekim.com
benjamin.sauter@kobrekim.com
steven.perlstein@kobrekim.com
**KOBRE & KIM LLP**
800 Third Avenue
New York, NY 10022
Telephone: 646-658-4972
Facsimile: 212-488-1220

Adriana Riviere-Badell
Florida State Bar No. 30572
Gabriela Ruiz
Florida State Bar No. 46844
Joshua Kushner
Florida State Bar No. 93597
adriana.riviere-badell@kobrekim.com
gabriela.ruiz@kobrekim.com
Joshua.kushner@kobrekim.com
**KOBRE & KIM LLP**
201 South Biscayne Boulevard, Suite 1900
Miami, Florida 33131
Telephone: 305-967-6100
Facsimile: 305-967-6120

*/s/ S. Calvin Capshaw*
S. Calvin Capshaw
Texas State Bar No. 03783900
Elizabeth L. DeRieux

Texas State Bar No. 05770585
ccapshaw@capshawlaw.com
ederieux@capshawlaw.com
**CAPSHAW DERIEUX LLP**
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: 903-845-5770

*/s/ Claire Abernathy Henry*
T. John Ward Jr.
Texas State Bar No. 00794818
Claire Abernathy Henry
Texas State Bar No. 24053063
Andrea L. Fair
Texas State Bar No. 24078488
jw@jwfirm.com
claire@wsfirm.com
andrea@wsfirm.com
**WARD, SMITH & HILL, PLLC**
PO Box 1231
Longview, TX 75606
Telephone: 903-757-6400
Facsimile: 903-757-2323

*Attorneys for Plaintiff*
*Fractus, S.A.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via electronic mail pursuant to Local Rule CV-5(c), on June 25, 2019.

*/s/ Michael Ng*         
Michael Ng

## <u>CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL</u>

I hereby certify that this document is being filed under seal pursuant to the Court's authorization in Section V.B.4 of the Protective Order entered in this matter.

*/s/ Michael Ng*         
Michael Ng
