# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| FRACTUS, S.A., <br><br> Plaintiff, <br><br> v. <br><br> AT&T MOBILITY LLC, | § § § § § § § § | **CIVIL ACTION NO. 2:18-CV-00135-JRG** <br> **LEAD CASE** |
| T-MOBILE US, INC., T-MOBILE USA, INC., | § § § § | **CIVIL ACTION NO. 2:18-CV-00137-JRG** <br> **MEMBER CASE** |
| VERIZON COMMUNICATIONS INC., CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, <br><br> Defendants. | § § § § § § | **CIVIL ACTION NO. 2:18-CV-00138-JRG** <br> **MEMBER CASE** |

## MEMORANDUM OPINION AND ORDER

Before the Court is Intervenor-Defendant CommScope Technologies LLC's ("CommScope") Motion to Sever Claims Against CommScope and Stay Related Claims Against Carrier Defendants (the "Motion"). (Dkt. No. 231.) By its Motion, CommScope seeks to sever and try together in "a single, separate action" the claims asserted against it by Fractus, S.A. ("Fractus") in this group of consolidated cases, and to stay the remaining claims in the consolidated cases. (Dkt. No. 231, at 3.) Having considered the Motion and for the reasons set forth herein, the Court is of the opinion that the Motion should be and hereby is **DENIED**.

## I.  Factual Background

In April 2018, Fractus filed four separate suits against the four major domestic cellphone carriers—AT&T,[1] Sprint,[2] T-Mobile,[3] and Verizon[4] (collectively, the "Carrier Defendants")—alleging that antennas deployed by the Carrier Defendants across their networks infringe several patents owned by Fractus. The antennas accused of infringement, in each case, are made by as many as seven different manufacturers. (Dkt. No. 231, at 1.) In August 2018, one of those manufacturers, CommScope, moved to intervene in each of these cases. (Dkt. No. 79.) Neither Fractus nor the Carrier Defendants opposed this intervention (*id.* at 5), which was granted by the Court (Dkt. No. 87). Shortly thereafter, another manufacturer, CellMax Technologies AB ("CellMax") moved to intervene in three of the four cases.[5] (Dkt. No. 95.) No party, including CommScope, opposed CellMax's intervention (*id.* at 4), which was likewise granted by the Court (Dkt. No. 104).

After the intervention of CommScope and CellMax (collectively, the "Intervenor-Defendants"), Fractus amended its complaints in each case to assert claims for infringement against the Intervenor-Defendants directly. Fractus later narrowed its infringement contentions against the Intervenor-Defendants only to antennas sold to the four Carrier Defendants. (*See* Dkt. No. 217, at 2.)

---

[1] AT&T Mobility LLC ("AT&T"). (Case No. 2:18-cv-135-JRG, Dkt. No. 1 (the "AT&T Case").) Unless otherwise indicated, all docket citations are to the lead case, Case No. 2:18-cv-135-JRG.
[2] Sprint Communications Company, L.P., Sprint Spectrum, L.P., Sprint Solutions, Inc., and Nextel Operations, Inc. (collectively, "Sprint"). (Case No. 2:18-cv-136-JRG, Dkt. No. 1 (the "Sprint Case").) The Sprint Case has since settled. (Dkt. No. 287.)
[3] T-Mobile US, Inc. and T-Mobile USA, Inc. (collectively, "T-Mobile"). (Case No. 2:18-cv-137-JRG, Dkt. No. 1 (the "T-Mobile Case").)
[4] Verizon Communications Inc. and Cellco Partnership d/b/a Verizon Wireless (collectively, "Verizon"). (Case No. 2:18-cv-138, Dkt. No. 1 (the "Verizon Case").)
[5] CellMax did not seek to intervene in the Verizon case. (Dkt. No. 91, at 1 n.1.)

In March 2019, the Carrier Defendants filed a notice with the Court communicating their position that, in order to "substantially decrease the size and complexity of each trial and thus help ameliorate jury confusion," "the Court [should] conduct six trials: one each for the two intervenor-defendant manufacturers—CommScope and CellMax—addressing all claims as to each of their respective antennas, and separate trials for each of the four wireless carriers—AT&T, Sprint, T-Mobile, and Verizon—addressing claims as to accused antennas supplied by manufacturers that have not intervened."[6] (Dkt. No. 214, at 1–2.) Consistent with this position, CommScope subsequently filed this Motion, seeking to sever the claims against it and stay the claims against the Carrier Defendants. (Dkt. No. 231, at 3.)

Since the completion of briefing on this Motion, Fractus has settled all claims in the Sprint Case, and all claims in the AT&T Case except those against CommScope and CellMax. (Dkt. Nos. 287, 534.) Accordingly, three cases in this consolidated group remain pending: (1) the AT&T Case, in which claims against CommScope and CellMax remain pending as to CommScope and CellMax products; (2) the T-Mobile Case, in which claims against T-Mobile, CommScope, and CellMax remain pending as to CommScope and CellMax products and claims against T-Mobile remain pending as to the as to other manufacturers' products; (3) and the Verizon Case, in which claims against Verizon and CommScope remain pending as to CommScope products and claims against Verizon remain pending as to other manufacturers' products.

---

[6] Despite their indication that the trials involving the Carrier Defendants would only address "accused antennas supplied by manufacturers that have not intervened," the Carrier Defendants do not expressly agree to be bound by an early resolution of the claims against the Intervenor-Defendants. (Dkt. No. 214.)

**II. Legal Standard**

Rule 21 of the Federal Rules of Civil Procedure allows the court to sever any claim against a party. Fed. R. Civ. P. 21. The district court has "broad discretion" when deciding whether to sever under Rule 21. *In re EMC Corp.*, 677 F.3d 1351, 1355 (Fed. Cir. 2012).

Generally speaking, Section 19(d) of the America Invents Act ("AIA"), codified as 35 U.S.C. § 299, provides that defendants accused of patent infringement may not involuntarily "be joined in one action as defendants or counterclaim defendants, or have their actions consolidated for trial," unless the alleged infringement arose out of the same "transaction, occurrence or series of transactions or occurrences relating to . . . the same accused product or process." 35 U.S.C. § 299(a); *Team Worldwide Corp. v. Wal–Mart Stores, Inc.*, 287 F. Supp. 3d 651, 653 (E.D. Tex. 2018). "Misjoinder" under § 299 may be cured via Rule 21. *Team Worldwide*, 287 F. Supp. 3d at 653.

Additionally, severance of claims against a manufacturer from claims against that manufacturer's customers pursuant to Rule 21 is appropriate where "(1) the remaining claims are peripheral to the severed claims" and "(2) adjudication of the severed claims would potentially dispose of the remaining claims." *Cellular Commc'ns Equip., LLC v. Apple Inc.*, No. 6:14-cv-251, 2016 WL 6884648, at *1 (E.D. Tex. Aug. 26, 2016) (citing *Shifferaw v. Emson USA*, No. 2:09-cv-54, 2010 WL 1064380, at *1 (E.D. Tex. Mar. 18, 2010)); *see also Saint Lawrence Commc'ns LLC v. Apple Inc.*, No. 2:16-cv-82-JRG, 2017 WL 3712912, at *2 (E.D. Tex. July 12, 2017). Regarding the first factor, "where a single manufacturer is the only entity in the U.S. who makes and sells the only accused products to the retailers, a patent infringement claim against a retailer is peripheral to the claims against the manufacturer." *Cellular Commc'ns*, 2016 WL 6884648, at *2 (quoting *Shifferaw*, 2010 WL 1064380, at *3). As to the second factor, "the manufacturer's case need only

4

have the potential to resolve 'major issues' concerning the claims against the customer—not every issue—in order to justify a stay of customer suits." *Id.* at *3 (quoting *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1358 (Fed. Cir. 2011)).

### III. Discussion

The Court finds that CommScope's requested severance is neither mandated by the AIA nor appropriate under *Saint Lawrence*. CommScope argues that "Fractus's decision to file complaints against CommScope and CommScope's customers puts these cases in line with this Court's *St. Lawrence Communications* jurisprudence. This is not a situation like *Team Worldwide*, where the intervenor was never sued as a defendant but nevertheless sought severance and a change in venue." (Dkt. No. 231, at 1 (citations omitted).) The Court disagrees on both points. That Fractus asserted claims directly against CommScope after it intervened does not meaningfully differentiate this case from the Court's holding in *Team Worldwide* that intervenors do not enjoy § 299 protections.[7] Moreover, Fractus's claims against the Carrier Defendants are not merely peripheral to the claims against CommScope such that severance under *Saint Lawrence* is appropriate. Additionally, the Court finds that the relief requested by CommScope would not result in a just, speedy, and inexpensive resolution of the claims asserted in these cases. Therefore, CommScope's request to sever the claims against it and stay the claims against the Carrier Defendants should be and is denied.

---

[7] In any event, § 299 would not provide CommScope a right to be tried separately from the Carrier Defendants with regard to the "same accused products" CommScope sold to them for subsequent use as part of "the same . . . series of transactions or occurrences." 35 U.S.C. § 299(a)(1).

## A. The AIA Does Not Mandate Severance of CommScope's Claims.

### 1. Section 299 does not apply to parties who intervene under Rule 24.

The Court disagrees with CommScope that the AIA mandates a severance in this case. Section 299 applies to parties who are involuntarily joined as defendants under Rule 20 or who are consolidated for trial under Rule 42, but not those who voluntarily intervene in a case under Rule 24. *Team Worldwide*, 287 F. Supp. 3d at 654–55. The plain text of § 299 expressly addresses when parties "may be *joined* in one action as defendants or counterclaim defendants, or have their actions *consolidated* for trial." 35 U.S.C. § 299(a) (emphasis added). The legislative history of the AIA confirms that Congress's use of this language was intentional. As stated in the House Report accompanying the AIA, § 299 "addresses joinder under Rule 20 and consolidation of trials under Rule 42." H.R. REP. NO. 112–98 pt.1 at 54–55 (2011). However, § 299 says nothing about parties who intervene under Rule 24.

Congress's distinction fits squarely with the purpose of § 299, which was to "address[] problems occasioned by the joinder of defendants (sometimes numbering the dozens) who have tenuous connection to the underlying dispute in patent infringement suits." *Id.* at 54. To address abuses caused by plaintiffs *involuntarily* joining multiple tenuously related defendants into a single action, Congress provided § 299 protections. However, Congress continued to allow for *voluntary* joinder or consolidation, allowing defendants to try claims together if they so choose. *See* 35 U.S.C. § 299(c). Section 299's silence on intervening defendants is consistent with its involuntary–voluntary framework. Such framework protects against involuntary joinder while providing an avenue for voluntary trial of multiple defendants.

In short, both the language and structure of § 299 make clear that the statute provides protections for defendants who are involuntarily sued in the same action, not a mechanism for an

6

intervenor to extract itself from a lawsuit after it has voluntarily come to court and asked to join in.

This Court is without power to read protections for intervenors into a statute that is silent as to intervention. It is for Congress, not the courts, to rewrite statutes. *See Blount v. Rizzi*, 400 U.S. 410, 419 (1971). "[A]bsent a total abrogation of Rule 24, as compared to Rule 20, in patent cases, the Court is neither inclined nor empowered to sever the Intervenors into separate cases pursuant to § 299." *Team Worldwide*, 287 F. Supp. 3d at 657.

2. **Joinder of additional claims under Rule 18 does not create § 299 protections.**

CommScope attempts to distinguish this Court's prior holding in *Team Worldwide Corp. v. Wal-Mart Stores, Inc.*, by arguing that its status materially changed when Fractus amended its complaints to assert claims against CommScope directly. (Dkt. No. 231, at 14.) This argument again misunderstands the application of the Federal Rules of Civil Procedure, namely the joinder of additional ***parties*** to a lawsuit via Rule 20 as opposed to the joinder of additional ***claims*** via Rule 18.

A party who has already asserted claims against another party is free to assert any additional claims against that party pursuant to Rule 18—that is precisely what happened here. When CommScope intervened successfully in this lawsuit, it became a direct target of the claims asserted by Fractus against the Carrier Defendants. Indeed, CommScope affirmatively took on these claims by seeking intervention. "When a party intervenes, it becomes a full participant in the lawsuit and is treated just as if it were an original party." *Schneider v. Dumbarton Developers, Inc.*, 767 F.2d 1007, 1017 (D.C. Cir. 1985). "By successfully intervening, a party makes himself vulnerable to complete adjudication by the federal court of the issues in litigation between the interven[or] and the adverse party." *United States v. Oregon*, 657 F.2d 1009, 1014 (9th Cir. 1981);

*see also United States v. Jim*, 891 F.3d 1242, 1252–53 (11th Cir. 2018); *Barnes v. Harris*, 783 F.3d 1185, 1191 (10th Cir. 2015); 7C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1920 (3d ed. 2019). Thus, from the moment of its intervention, CommScope was the subject of those claims in the face of which it intervened.

Fractus's assertion of *additional* claims against CommScope post-intervention does not alter CommScope's status as an intervenor, and it does not confer protections under § 299. Once CommScope directly intervened in the claims asserted against the Carrier Defendants, and became a direct target of them, Fractus was free to "join, as independent or alternative claims, as many claims as it has against" CommScope. Fed. R. Civ. P. 18(a). The joinder of additional *claims* under Rule 18 is completely distinct from the issues of joinder of *parties* under Rule 20. Section 299 is concerned with the latter, not the former. *See* 35 U.S.C. § 299(a) ("accused infringers may be joined . . . as defendants or counterclaim defendants"). Fractus's joinder of additional claims unique to CommScope under Rule 18 does not change the way CommScope as a *party* came into this case—voluntarily, as an intervenor under Rule 24.

A party that intervenes as a defendant under Rule 24 does not become "joined in one action" under Rule 20 simply because additional claims are joined against it under Rule 18 post-intervention. 35 U.S.C. § 299(a). Such a party remains outside the scope of § 299.

### 3. **CommScope waived any "misjoinder" defense.**

Alternatively, even if § 299 did apply, CommScope waived any "misjoinder" defense. *See* 35 U.S.C. § 299(c). CommScope voluntarily intervened in these cases against the Carrier Defendants and then acquiesced to CellMax's presence in these cases by declining to oppose CellMax's intervention. Having voluntarily placed itself in this situation, CommScope can hardly now complain that it is prejudiced by having to defend itself in the same cases as the Carrier Defendants and CellMax. Accordingly, the Court finds that even if § 299 applied in these cases,

8

CommScope waived its "misjoinder" defense and its motion to sever should be denied independently on that basis. *Team Worldwide*, 287 F. Supp. 3d at 657 n.13.

### B. Severance Under *Saint Lawrence* is Not Appropriate.

CommScope next argues that severance is nonetheless appropriate under *Shifferaw* and the line of cases applying it, including *Saint Lawrence*. (Dkt. No. 231, at 8.) However, severance of claims against a manufacturer from claims against its customers is appropriate only if (1) "the remaining claims are peripheral to the severed claims" and (2) "adjudication of the severed claims would potentially dispose of the remaining claims." *Saint Lawrence*, 2017 WL 3712912, at *2. The Court finds that neither factor is met where, as here, a patent owner sues a manufacturer's customer for infringement based on both products sold by that manufacturer as well as products sold by unrelated manufacturers. Where a customer is sued for infringement based upon accused products it purchased from multiple unrelated manufacturers, the customer is the "true defendant," not any single manufacturer. *In re Nintendo*, 756 F.3d 1363 (Fed. Cir. 2014).

CommScope manufacturers only a portion of the products accused of infringement in each case against a Carrier Defendant. It cannot be said that "the remaining claims" as to the non-CommScope products "are peripheral to the severed claims" against CommScope. *Shifferaw*, 2010 WL 1064380, at *1. Indeed, the remaining claims are *entirely unrelated* to the claims sought to be severed except in one key respect—they are all asserted against the Carrier Defendant who purchased all the disparate products. This is not a case "where a *single* manufacturer is the only entity in the U.S. who makes and sells the *only* accused products to the retailer[]," and thus the claims against the retailer are not "peripheral to the claims against the manufacturer." *Cellular Commc'ns*, 2016 WL 6884648 at *2 (emphasis added).

Similarly, "adjudication of the severed claims" cannot possibly "dispose of the remaining claims." *Shifferaw*, 2010 WL 1064380, at *1. To be sure, "the manufacturer's case need only have

9

the potential to resolve 'major issues' concerning the claims against the customer—not every issue—in order to justify a stay of customer suits." *Cellular Commc'ns*, 2016 WL 6884648 at \*3. However, "major issues before [the C]ourt, including patent infringement," will remain in the cases with respect to products not sold by CommScope, regardless of the resolution of the claims against CommScope. *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990). Fully adjudicating infringement as to an entirely different set of products is not a "minor issue." Nor is it clear that resolution of other potentially common issues, such as patent validity, would resolve those issues in the cases against the Carrier Defendants, where the scope of accused products is broader than CommScope's and the Carrier Defendants have not indicated any inclination to be bound by a judgment against CommScope. To the contrary, the Carrier Defendants have indicated their intent "to separately defend allegations regarding the CommScope products," relying upon "the general rule that 'one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party.'" (Dkt. No. 214, at 2 (quoting *Tayor v. Sturgell*, 553 U.S. 880, 892 (2008)).)

Fractus's claims against the Carrier Defendants are not peripheral to its claims against CommScope, nor does the resolution of the claims against CommScope have the potential to resolve all of the major issues involved in the claims against the Carrier Defendants. Accordingly, severance of the claims against CommScope pursuant to *Saint Lawrence* and *Shifferaw* is inappropriate.[8]

---

[8] The Court also notes material factual differences between the cases relied on by CommScope and the present case. In *Saint Lawrence* and *Shifferaw*, plaintiffs filed infringement actions against *both* a manufacturer and its customers. *Saint Lawrence*, 2017 WL 3712912, at \*1; *Shifferaw*, 2010 WL 1064380, at \*1. Here, Fractus filed suits only against the Carrier Defendants, and CommScope, the manufacturer, petitioned the Court to intervene. Having done so, CommScope does not stand in the same position as the manufacturer defendants in *Saint Lawrence* and *Shifferaw*.

### C. CommScope's Requested Severance is Not Otherwise Appropriate Under Rule 21.

Having determined that the AIA and *Saint Lawrence* do not militate in favor of a severance and stay in these cases, the Court sees no other independent reason to exercise its discretion to sever and stay under Rule 21. The Federal Rules of Civil Procedure are to be "construed, administered, and employed" so as "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1; *see also Nintendo*, 756 F.3d at 1365 (noting that "Rule 21 [is] designed to facilitate just, convenient, efficient, and less expensive determination" of cases). CommScope's requested relief achieves none of these results.

The Court does see some benefit, particularly by way of reduced jury confusion, in trying the claims set forth in these cases on a product-by-product, rather than a carrier-by-carrier, basis. However, such benefits would quickly wane if the claims related to the accused products sold by CommScope, or CellMax, are decided without the participation of the Carrier Defendants or, at least, an agreement to be bound by the results of a trial against those manufacturers.

The Court believes that a separate trial as to each manufacturer's products in which all of the customers participate would achieve the greatest efficiency for all parties involved with the least risk of jury confusion. The Court understands that this would require the agreement of the remaining Carrier Defendants—Verizon and T-Mobile—to waive their § 299 right not to be consolidated into an action together.

### IV.  Conclusion

For the reasons set forth herein, CommScope's Motion to Sever Claims Against CommScope and Stay Related Claims Against Carrier Defendants (Dkt. No. 231) is **DENIED**. The parties in the consolidated cases are **ORDERED** to jointly appear at a status conference set

for **Wednesday, July 24, 2019, at 1:30 p.m. in Marshall, Texas** to explore the most appropriate trial sequence in light of this Order.

**So ORDERED and SIGNED this 19th day of July, 2019.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE